# EXHIBIT 2

**January 22, 2018, correspondence containing decision on appeal (Liberty/Bushee 082-088)**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

JULIE MERSCH
LAW OFFICE OF JULIE A. MERSCH
701 S 7TH STREET
LAS VEGAS NV 89101

Liberty Mutual INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5703

January 22, 2018

Julie A. Mersch
Law Office of Julie A. Mersch
701 S 7TH STREET
LAS VEGAS, NV 89101

RE: Long Term Disability (LTD) Benefits
Safeway, Inc.
Claim #: 3626132
Claimant: Tatiana Bushee

Dear Julie Mersch:

We completed our review of your appeal request, on Ms. Bushee's behalf, for Long Term Disability Benefits and are maintaining the decision to deny her benefits beyond July 27, 2017.

**Claim and Initial Decision**

Ms. Bushee filed a claim for bilateral carpal tunnel syndrome, with a date of disability of January 29, 2015; she satisfied the Elimination Period for long-term disability benefits on July 28, 2015. Therefore, on July 28, 2017, she experienced the change in definition of disability, from the ability to perform the material and substantial duties of her own occupation to the ability to perform *any other occupation* for which she is qualified.

The information contained in her file includes, but not limited to, office treatment notes, surgical reports, hospital records, emergency room records, physical therapy notes, therapy notes, medications, lab results, and diagnostic test results from Mission Valley Medical Clinic, Nevada Pain and Spine Specialists, Reno Orthopaedic Clinic, and Drs. Christenson, Berman, Pohl, Glick, and Panicari, as well as Rhonda Finrillo, MPT. Based on the medical information contained in her file, we conducted our claim investigation.

During the initial claim investigation, we reviewed the information in her file. This review, which included a physician peer review, concluded the material and substantial duties of her occupation exceed her physical functional capacity. Therefore, her claim was approved based on her inability to perform the duties of her own occupation.

We received additional records and concluded based on the totality of medical information in her file, including additional physician peer reviews that she continues to be unable to sustain functional capacity at any demand level. This would prevent her from returning to her previous occupation; therefore, we continued her long-term disability benefits through the “own occupation” period.

As part of our ongoing claim investigation, we requested and received updated medical records. We reviewed the information submitted and concluded we should refer her file for a physician peer review. Therefore, we referred her file to Vincent Battista, M.D., board certified in Orthopaedic Surgery, sub specialty certificate in surgery of the hand, for review. Following the review of her file, which included a telephone conversation with Dr. Christensen, Dr. Battista concluded:

> *The medical documentation supports decreased sensation but does not support limitations secondary to this sensory disturbance. The last note by Dr. Christensen documents that there is no thenar atrophy. Sensory disturbance alone does not lead to medically necessary limitations or restrictions. The claimant had an FCE which showed that she could perform sedentary duty - I did not have the FCE and this information was relayed to me by Dr. Christensen. I am not sure the reasoning behind the level of work restriction.*
>
> *The claimant’s impairment supported in the medical record is diminished sensation in the radial 3 digits of both hands - this impairment does not in and of itself translate in restrictions or limitations as these complaints would not affect any activities within a workplace setting.*

Dr. Battista noted there were no current side effects to any medications and she has the capacity to perform the duties on a sustained basis within the restrictions and limitations.

Based on the results of Battista’s review and the information in her file, including the prior physician reviews, we determined we should refer her file for an additional physician review. Therefore, we referred her file to a physician, board certified in Orthopedic Surgery, for review. Following the review of her file, the physician concluded:

> *The supported impairing orthopedic diagnoses are bilateral recurrent carpal tunnel syndrome and median neuritis left > right, with chronic hand and arm pain. Supported comorbid conditions include cervical spondylosis, chronic bilateral hand tenosynovitis, and chronic myofascial pain syndrome.*
>
> *Impairment as a result of these diagnoses results in difficulty with: repetitive flexion and extension of the wrist; sustained awkward wrist positions; firm and sustained grasp/grip/pinch; dexterity and fine finger manipulation; and constant handling of objects.*
>
> *These impairments reasonably translate to R/Ls at the present time including:*
>
> - *unrestricted sitting, standing, and walking, reaching at all levels, bending, turning the torso, stooping, crouching, squatting, kneeling, balancing, and stair-climbing;*

- *exerting up to 10 pounds of force occasionally, and/or negligible force frequently with the right and/or left upper extremity;*
- *light grasp/grip/pinch, fingering, handling and manipulating objects, and keyboarding no more than 50% of the time;*
- *firm grasp/grip/pinch, and use of vibratory tools should be avoided.*

*Persistent CTS after surgical decompression has been reported in up to 25% of cases, usually due to recurrent scarring (3, 7). Due to the chronicity of this claimant's symptoms and surgical findings of neural inflammation and scarring, these R/Ls would be expected to continue indefinitely.*

Therefore, the totality of the information contained in the file and all the physician peer reviews, supports that she has sedentary functional capacity on a full-time sustainable basis.

**Vocational Review**

Her file was reviewed by a vocational consultant to identify alternative occupations for which she is qualified. This vocational assessment considers her transferable skills compared with her limitations. The results of this report indicate she has acquired, based on her education, training, and work history, the following transferable skills:

*Clerical Skills:*

- Take and input orders,
- At least rudimentary computer and data entry skills – per the job description,
- Keep accurate records,
- Telephone skills

*Communication Skills:*

- Speak with customers and resolve problems,
- Speak persuasively to influence sales,
- Interact with co-workers and supervisors

These skills would allow her to perform the following vocational alternative:

1. Information Clerk
2. Security Guard

Based on the totality of the information contained in her file and the clinical and vocational reviews, the information does not support a severity in restrictions and limitations rendering her continually unable to perform the duties of any occupation; therefore, her claim was closed. The basis for our denial was outlined in our letter of June 13, 2017. At that time, she was given the opportunity to provide additional medical and/or vocational documentation, which she felt, would support her claim. Specifically, we asked for copies of office treatment notes, diagnostic test results, pharmacy records, physical/occupational therapy notes, consultations, procedure/operative reports, hospital records, and restrictions and limitations from all her treating providers.

**Appeal Evaluation**

On June 16, 2017, we received Ms. Bushee's request for a copy of her file, which was sent to her on June 22, 2017. We received a call from her husband stating they entered the wrong password on the thumb drive and asked for another copy of her file, which was sent to them on September 14, 2017. We received your appeal request, on her behalf, on December 14, 2017, along with the information you included. At that time, her file was referred to the appeal unit for review.

We reviewed the information submitted and concluded we should refer her file for another physician peer review. Therefore, we referred her file to William J. Kroski, DO, board certified in Physical Medicine and Rehabilitation, sub specialty certificate in Pain Medicine, added expertise in Spine, for review. Following the review of her file, Dr. Kroski concluded:

> *On 03/26/15, an EMG revealed bilateral carpal tunnel syndrome. On 04/22/15, the claimant had left open carpal tunnel release surgery performed. On 06/18/15, Dr. Christensen noted the claimant was not progressing as expected. From 08/05/15 through 11/04/15, the claimant was treated by Dr. Berman. Pain medications and nerve blocks were unsuccessful managing her pain. 06/30/16, the claimant was seen bilateral hand pain by Dr. Christensen who noted physical examination showed a positive Tinel's sign in both hands. On 02/09/17, the claimant was examined by Dr. Christensen. She continued to have pain and paresthesia as well as burning and tingling in her hands during the day and at night. She had very limited use of both hands. Exam noted decreased sensation in the median nerve distribution bilaterally. Positive Tinel's over the median nerve at the wrist bilaterally was noted.*
>
> *Based on the provided documentation, functional impairment with the following restrictions/limitations was supported for the period in review from 07/27/2017 to present:*
>
> - *Lifting/carrying: Up to 20 pounds occasionally, up to 10 pounds frequently,*
> - *Keyboarding: Occasionally,*
> - *Upper Extremity use: Occasionally with all maneuvers,*
> - *There are no other restrictions/limitations.*
>
> *With these restrictions in place, it is expected that the claimant can sustain full time capacity over an 8 hour work day. These restrictions should be in place for six months from the date of this review, then be reevaluated.*

Dr. Kroski noted there are no medication side effects that would impact her functional ability and she would be able to perform at a sustained full-time capacity within the identified restrictions.

**Conclusion**

We conducted a thorough and independent review of her entire claim. In summary, we do understand that she may have continued to experience some symptoms associated with her conditions beyond July 27, 2017. We also understand that her symptoms may result in some degree of functional impairment and may preclude her from performing some

occupations. However, the information does not contain exam findings, diagnostic test results or other forms of medical evidence substantiating that her symptoms remained of such severity that they resulted in physical restrictions or limitations rendering her unable to perform the duties of any occupation after that date.

Having carefully considered all of the information submitted in support of her claim, our position remains that proof of her continued disability in accordance with the Safeway, Inc. Policy provisions after July 27, 2017, has not been provided, and our original determination to deny benefits beyond that date is upheld.

Determinations made by Liberty Life Assurance Company of Boston are based on the provisions outlined in the Safeway, Inc.'s Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. Therefore, an award of Social Security Disability Benefits is not determinative of entitlement to benefits under the specific terms and conditions of the Safeway, Inc.'s Group Disability Income Policy.

The Social Security Administration will afford special deference to the opinion of a treating physician over the opinion of a non-treating physician. However, the treating physician rule followed by the Social Security Administration is not applicable in ERISA benefit cases. The Social Security Administration also has various additional medical and vocational rules that are not applicable to our evaluation.

In our review of her claim, we fully considered the totality of all medical and vocational documentation received; including updated medical records dated after the August 13, 2017, Notice of Award from the Social Security Administration. We also obtained and considered additional clinical reviews, which was not considered by the Social Security Administration in its determination process.

This claim determination reflects an evaluation of the claim facts and policy provisions.

**Policy Provisions**

The Safeway, Inc. Long Term Disability policy, under which she is covered, states:

*__"Disability"__ or __"Disabled"__ means:*

1. *For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

   i. *if the Covered Person is eligible for the 24 Month Own Occupation benefit, __"Disability"__ or __"Disabled"__ means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

   ii. *thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

> ***"Own Occupation"****, with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*
>
> ***"Material and Substantial Duties"****, with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*
>
> ***"Any Occupation"*** *means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

Under the Employee Retirement Income Security Act (ERISA) Appeal guidelines, she was entitled to appeal the determination made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information wished to be considered as part of the appeal. Liberty has conducted a full and fair review of her appeal and accompanying materials, and has determined that the denial of benefits will be maintained.

At this time, her administrative right to review has been exhausted and no further review will be conducted by Liberty and her claim will remain closed. She may request to receive, free of charge, copies of all documents relevant to her claim. She has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Determinations made by Liberty Life Assurance Company of Boston are based on the provisions outlined in the Safeway, Inc. policy. These provisions are not contingent on decisions made by the Social Security Administration nor the Workers' Compensation Carrier.

We have rendered our final determination of this claim and will now close our file.

If you have any questions regarding this matter, please contact me.

Sincerely,

Charles Johnson
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16398
Secure Fax No.: (603) 334-5703